# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLORENCE WALKER,<br><br>                      Petitioner,<br><br>vs.<br><br>MARY LATTIMORE, Warden,<br><br>                      Respondent. | Civil No.      09cv1913 IEG (PCL)<br><br>**REPORT AND RECOMMENDATION RE: DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS** |

## I.     INTRODUCTION

Florence Walker (Walker) is a California prisoner serving a sentence of fifteen years in prison. In San Diego Superior Court case number SCD193885, Walker pleaded guilty on July 19, 2006, to two counts of assault with a deadly weapon. (Lodgment No. 1 at 00028.) Walker also admitted to having a prior conviction that prevented her from being sentenced to probation and which was both a serious felony and a "strike" within the meaning of California's three strikes law. (*Id.* at 00005-08.; Lodgment No. 20 at 3-7.)

Walker has filed a Petition (Pet.) for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 challenging her convictions. In her Petition, she contends: (1) the prior conviction used to enhance her sentence under California's three strikes' law was not a strike; (2) there was insufficient evidence to convict her of assault with a deadly weapon against Diana Berlinguette (count two); (3) she was improperly sentenced under California law; (4) she was not advised of her Fifth Amendment right against self incrimination with regard to her admission that she suffered a prior conviction nor of her Sixth Amendment right to a have a jury decide the validity of her prior conviction; and (5) her sentence

violates the Eighth Amendment to the United States Constitution. (Pet. at 5-10, Pet'rs Exs. at 2-32.[1])
In her Traverse, she claims trial and appellate counsel were ineffective. (Traverse at 6, 8-9, 13.)

This Court has reviewed the Petition, Respondent's Answer, the Traverse, and all supporting documents submitted by the parties. After a thorough review of the record, the Court finds that Petitioner is not entitled to the relief requested and **RECOMMENDS** that certain claims be dismissed as procedurally defaulted and that the Petition be **DENIED**.

## II.    FACTUAL BACKGROUND

This Court gives deference to state court findings of fact and presumes them to be correct; Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence. 28 U.S.C.A. § 2254(e)(1) (West 2006); *see also Parke v. Raley*, 506 U.S. 20, 35-36 (1992) (holding findings of historical fact, including inferences properly drawn from these facts, are entitled to statutory presumption of correctness). The following facts are taken from the California Court of Appeal's opinion denying Walker's direct appeal of her conviction:

> Viewing the record in the light most favorable to the judgement below (*People v. Johnson* (1980) 26 Cal.3d 557, 576), the following occurred: On August 11, 2005, Walker grabbed a former co-worker Diana McDaniel while McDaniel exited an elevator at UCSD Medical Center. The two began to fight. Walker pulled a hammer from her purse and hit McDaniel in the head with the hammer. Another woman, Ms. Berlinguette, was in the elevator. While she tried to protect an infant, Walker hit her on both arms with the hammer.
> Walker has a 1984 conviction of voluntary manslaughter (Pen. Code, § 192, subd. (a).)

(Lodgment No. 7 at 2.)

## III.   PROCEDURAL BACKGROUND

The San Diego County District Attorney filed a felony complaint charging Florence Ann Walker with two counts of assault with a deadly weapon against two victims, Diana McDaniel (count one) and Diana Berlinguette (count two), a violation of California Penal Code (Penal Code) section 245(a)(1). (Lodgment No. 1 at 00001-04.) As to each of these counts, the complaint also alleged that Walker personally used a deadly weapon, a hammer, within the meaning of Penal Code section 1192.7(c)(23). (*Id.*) The complaint also alleged that Walker had suffered two prior convictions which made her

---

[1] For ease of reference, the Court uses the page numbers assigned to Petitioner's documents by the Court's electronic filing system.

1  ineligible for probation, within the meaning of Penal Code section 1203(e)(4). (*Id.*) One of those
2  convictions was also alleged as a prior serious felony, within the meaning of Penal Code section 667(a),
3  668 and 1192.7(c), and as a prior strike conviction, within the meaning of Penal Code section 667(b)-
4  (i), 668, and 1170.12. (*Id.*)

5  Walker pleaded guilty to all charges and admitted suffering the prior convictions as alleged. (*Id.*
6  at 00005-08; Lodgment No. 20, vol. 1.) Walker was sentenced to the aggravated term of four years in
7  prison on the assault with a deadly weapon charge alleged in count one, which was doubled to eight
8  years pursuant to the three strikes law. (Lodgment No. 1 at 00028-29; Lodgment No. 20, vol. 2 at 17.)
9  She was also sentenced to two years in prison for the assault with a deadly weapon charge alleged in
10 count two, and five years in prison for personally using a hammer, for a total of fifteen years.
11 (Lodgment No. 1 at 00028-29; Lodgment No. 20, vol. 2.)

12 Walker appealed her conviction and sentence to the California Court of Appeal. (Lodgment No.
13 1 at 00030; Lodgment Nos. 2-6.) The court affirmed Walker's convictions and sentence in a written,
14 unpublished opinion. (Lodgment No. 7.) Walker thereafter filed a petition for review in the California
15 Supreme Court, which that court denied without citation of authority. (Lodgment Nos. 8, 9.)

16 Walker then filed a series of habeas corpus petitions in the state courts. She first filed a habeas
17 corpus petition in the San Diego Superior Court, which that court denied in a written, unpublished order.
18 (Lodgment Nos. 10, 11.) She then filed a habeas corpus petition in the California Court of Appeal on
19 September 8, 2008. (Lodgment No. 12.) While that petition was pending, she filed another habeas
20 corpus action in the San Diego Superior Court. (Lodgment No. 13.) On November 6, 2008, the
21 Superior Court denied her petition in a written, unpublished order, and on February 10, 2009, the state
22 appellate court denied the petition she had filed in that court in a written, unpublished opinion.
23 (Lodgment Nos. 14, 15.) She then filed another habeas corpus petition in the California Court of Appeal
24 which that court denied in a written, unpublished opinion. (Lodgment Nos. 16, 17.) Finally, Walker
25 filed a petition for writ of habeas corpus in the California Supreme Court. (Lodgment No. 18.) That
26 court denied the petition, stating "The petition for writ of habeas corpus is denied. (*See In re Dixon*
27 (1953) 41 Cal.2d 756.)." (Lodgment No. 19.)
28 / / /

On August 31, 2009, Walker filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, together with Exhibits, in this Court. (Doc. No. 1.) Respondent filed an Answer and Memorandum of Points and Authorities in support of the Answer on January 27, 2010. (Doc. No. 7.) Petitioner filed a Traverse on March 17, 2010. (Doc. No. 12.)

## IV.   DISCUSSION

### A.   *Standard of Review*

This Petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320 (1997). Under AEDPA, a habeas petition will not be granted with respect to any claim adjudicated on the merits by the state court unless that adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 8 (2002). In deciding a state prisoner's habeas petition, a federal court is not called upon to decide whether it agrees with the state court's determination; rather, the court applies an extraordinarily deferential review, inquiring only whether the state court's decision was objectively unreasonable. *Yarborough v. Gentry*, 540 U.S. 1, 4 (2003); *Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004). Additionally, the state court's factual determinations are presumed correct, and Walker carries the burden of rebutting this presumption with "clear and convincing evidence." 28 U.S.C.A. § 2254(e)(1) (West 2006).

A federal habeas court may grant relief under the "contrary to" clause if the state court applied a rule different from the governing law set forth in Supreme Court cases, or if it decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *Bell v. Cone*, 535 U.S. 685, 694 (2002). The court may grant relief under the "unreasonable application" clause if the state court correctly identified the governing legal principle from Supreme Court decisions but unreasonably applied those decisions to the facts of a particular case. *Id.* Additionally, the "unreasonable application" clause requires that the state court decision be more than incorrect or erroneous; to warrant habeas relief, the state court's application of clearly established federal law must be "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision. *Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991). If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds by *Andrade*, 538 U.S. at 75-76); *accord Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). However, a state court need not cite Supreme Court precedent when resolving a habeas corpus claim. *Early*, 537 U.S. at 8. "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent,]" *id.*, the state court decision will not be "contrary to" clearly established federal law. *Id.* Clearly established federal law, for purposes of § 2254(d), means "the governing principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Andrade*, 538 U.S. at 72.

B.   *Analysis*

Walker raises five claims in her petition. First, she argues the trial court improperly sentenced her to double the upper term under California's three strikes law. She claims the prior conviction upon which this sentence was based was not a strike under California law. (Pet. at 6; Pet'rs. Exs. 4-20.) Second, she claims there was insufficient evidence to support her conviction on count two, assault with a deadly weapon on Diana Berlinguette. (Pet. at 6-7; Pet'rs Exs. 22-30.) Third, she contends her sentence is illegal because the trial court improperly sentenced her on both assault counts in violation of Penal Code section 654 and that the imposition of the upper term on count one is unsupported by facts or law. (Pet. 8; Pet'rs Exs. at 30.) Fourth, she argues her Fifth Amendment right against self incrimination and her Sixth Amendment right to a trial were violated by the use of her prior conviction to enhance her sentence. (Pet. at 10; Pet'rs Exs. at 30-31.) Finally, she claims her sentence violates the Eighth Amendment's ban on cruel and unusual punishments. (Pet'rs Exs. at 35.) In her Traverse, Walker also alleges both trial and appellate counsel were ineffective. (Traverse at 6, 8, 13.)

Respondent argues Walker's claim that her prior conviction is not a strike (claim one), her claim that there was insufficient evidence to support her conviction for assaulting Diana Berlinguette (claim two), and her claim that she was improperly sentenced twice for the same conduct, as precluded by

1  California Penal Code section 654 (claim three), are procedurally defaulted because Walker first raised
2  them in the habeas petition she filed in the California Supreme Court, which denied the petition with
3  a citation to *In re Dixon*, 41 Cal. 2d 756 (1953). (Mem. of P. & A. Supp. Answer at 4-12, 11, 16;
4  Lodgment Nos. 18, 19.) As to Walker's claim that she was not properly advised of her right to a trial
5  on the validity of her prior convictions, Respondent contends the state court's denial of the claim was
6  neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. (Mem.
7  of P. & A. Supp. Answer at 17-19.) Respondent does not address Walker's Eighth Amendment claim.

8      1. *Whether Walker's Prior Conviction Constitutes a Strike Under California's Three*
9         *Strikes Law*

10  Walker first argues that she was improperly sentenced under California's three strikes law
11 because the prior conviction used to double the base term under the three strikes law was not a strike.
12 (Pet. at 6; Pet'rs. Exs. at 4-20.) Specifically, she contends that because her prior offense was what is
13 termed under California law as a "wobbler," meaning it can be charged as either a misdemeanor or a
14 felony, it was not a qualifying felony prior conviction for purposes of the three strikes law. (Pet. at 6;
15 Pet'rs Exs. at 4-20.) Respondent counters that the claim is procedurally defaulted; Respondent also
16 argues that federal law prohibits Walker from collaterally challenging a prior conviction and that, in any
17 event, the claim fails on the merits. (Mem. of P. & A. Supp. Answer at 4-11.)

18  Walker first raised this claim in the habeas corpus petition she filed in the California Supreme
19 Court. (Lodgment No. 18.) That court denied the petition with a citation to *In re Dixon*. (Lodgment
20 No. 19.) *Dixon* stands for the general proposition that, where possible, defendant must have first
21 pursued the claim on direct appeal before bringing the claim in a state habeas corpus petition. *See Park*
22 *v. California*, 202 F.3d 1146, 11561 (9th Cir. 2000) (discussing California's *Dixon* rule).

23      a. *Procedural Default*

24  The Ninth Circuit has held that because procedural default is an affirmative defense, Respondent
25 must first "adequately [plead] the existence of an independent and adequate state procedural
26 ground . . . ." *Bennett v. Mueller*, 322 F.3d 573, 586 (9th Cir. 2003). In order to place the defense at
27 issue, Walker must then "assert[] specific factual allegations that demonstrate the inadequacy of the state
28 procedure . . . ." *Id.* The "ultimate burden" of proving procedural default, however, belongs to the state.

1  *Id.* If the state meets its burden under *Bennett*, federal review of the claim is foreclosed unless Walker can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

i. *Independence*

In *Bennett*, the Ninth Circuit concluded that California's untimeliness rule, embodied in *In re Clark*, 5 Cal. 4th 750 (1993), was independent. The ruling in *Bennett* came as a result of the California Supreme Court's declaration in *In re Robbins*, 18 Cal. 4th at 770, 811-12 (1998), that it would no longer consider federal law when denying a habeas claim as procedurally barred under *Clark* or *Dixon*. *Bennett*, 322 F.3d at 582-82; *see also Park*, 202 F.3d at 11152.[2] Although the Ninth Circuit has not specifically determined whether a post-*Robbins* application of the *Dixon* rule is independent of federal law, the *Bennett* court's analysis of the independence of *Clark* compels the same result for claims barred pursuant to *Dixon*. The pre-*Robbins* application of the two procedural bars was similar in that the invocation of either *Dixon* or *Clark* required the state court to determine if there existed fundamental constitutional error that would excuse the petitioner's default, and such an analysis necessarily involved the consideration of federal law. *Bennett*, 322 F.3d at 581-82; *see also LaCrosse v. Kernan*, 244 F.3d 702, 707 (9th Cir. 2001) (observing that consideration of federal law in barring claims as pretermitted is "analogous" to consideration of federal law in barring claims as untimely). Furthermore, in *Protsman v. Pliler*, 318 F. Supp. 2d 1004, 1007-08 (S.D. Cal. 2004), a judge of this Court found a post-*Robbins* application of *Dixon* to be independent of federal law, and this Court agrees with that conclusion. Accordingly, Respondent has met his initial burden under *Bennett* to establish that *Dixon* is an independent state procedural bar. *Bennett*, 322 F.3d at 586.

ii. *Adequacy*

Respondent also asserts the *Dixon* bar is adequate. Accordingly, Respondent's initial burden under *Bennett* is satisfied. *Bennett*, 322 F.3d at 586. Citing *Bennett*, Respondent contends that Walker has not cited to any legal authority or factual allegations which rebut Respondent's initial showing.

---

[2] The California Supreme Court denied Walker's habeas corpus petition with a citation to *Dixon* on July 22, 2009, well after the decision in *Robbins*. (*See* Lodgment No. 19.)

1 (Mem. P. & A. Supp. Answer at 11.)  Respondent is correct that although Walker makes general
2 references to "procedural default" and "cause and prejudice" in her Traverse, she makes no specific
3 allegations as to the inadequacy of *Dixon*. (Traverse at 4, 8, 14.)  Thus, Walker has not made a showing
4 sufficient to shift the burden back to Respondent. *Bennett*, 322 F.3d at 586.

       iii. *Respondent Has Met His Burden Under Bennett*

6   For the foregoing reasons, the Court concludes that Respondent has established that the state
7 court imposed an independent and adequate procedural bar to this claim. *Bennett*, 322 Fl.3d at 586.
8 Federal review of the claim is therefore barred unless Walker can demonstrate cause for the default and
9 actual prejudice or a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750.

       iv. *Cause*

11   The cause prong is satisfied if Walker can demonstrate some "objective factor" that precluded
12 her from raising her claims in state court, such as interference by state officials or constitutionally
13 ineffective counsel. *McClesky v. Zant*, 499 U.S. 467, 493-94 (1991).  Walker does claim that counsel
14 was ineffective for failing to argue that her prior conviction did not constitute a strike under California
15 law.  (Traverse at 6, 8.)  As discussed below, however, in section IV(B)(7) of this Report and
16 Recommendation (R&R), this Court concludes that counsel was not ineffective for failing to raise this
17 claim in state court.  Accordingly, this cannot form the basis for a successful showing of cause under
18 *Coleman*. Walker does not allege any other "objective factor" that precluded her from raising this claim,
19 and thus she has not established cause for the default.  *McClesky*, 499 U.S. at 493-94.

       v. *Prejudice*

21   "Prejudice [sufficient to excuse procedurally barred claims] is actual harm resulting from the
22 alleged error." *Vickers v. Stewart*, 144 F.3d 613, 617 (9th Cir. 1998).  Walker has failed to establish
23 prejudice resulting from the state court's refusal to address the merits of the claim.  As discussed below
24 in section IV(B)(1)(b) of this R&R, this claim is meritless.

       vi. *Fundamental Miscarriage of Justice*

26   Walker has also failed to demonstrate that failure to consider the claim will result in a
27 fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 750.  The Supreme Court has limited the
28 "miscarriage of justice" exception to petitioners who can show that "a constitutional violation has

1  probably resulted in one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). "Actual
2  innocence" means factual innocence, not merely legal insufficiency; a mere showing of reasonable doubt
3  is not enough." *See Wood v. Hall*, 130 F.3d 373, 379 (9th Cir. 1997). Walker has presented no evidence
4  to establish she is innocent of the charges to which she pleaded guilty. Thus, Walker has not
5  demonstrated that she is actually innocent of the crimes of which he has been convicted. *Schlup*, 513
6  U.S. at 327.

7                   vii.  *Conclusion*

8  For all the foregoing reasons, the Court concludes Walker's claim that the state court improperly
9  sentenced her to an enhanced term under California's three strikes law is procedurally defaulted.
10 Further, Walker has not shown cause and prejudice or a fundamental miscarriage of justice. Federal
11 review of this claim is therefore precluded. *Coleman*, 501 U.S. at 750.

12          b.      *Merits*

13 Even if the claim is not procedurally defaulted, it fails for two reasons. First, Federal habeas
14 relief is not available for alleged violations of state law. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991);
15 see also 28 U.S.C. § 2254(a). The Ninth Circuit has specifically held that a challenge to a sentence based
16 on a claim that a prior conviction does not constitute a strike under California law is not cognizable on
17 federal habeas review. *Miller v. Vasquez*, 868 F.2d 1116, 1118-19 (9th Cir. 1989). In any event,
18 Walker's claim fails even under state law. A violation of Penal Code section 245(a)(1) qualifies as a
19 strike if it was committed with a deadly weapon or the defendant personally inflicted great bodily injury.
20 *See People v. Delgado*, 43 Cal. 4th 1059, 1231 (2008). According to the probation report, Walker
21 pleaded guilty in 1993 to assault with a deadly weapon after she slashed her fourteen-year-old son with
22 a knife causing a wound that required four stitches. (Lodgment No. 1 at 00013.) These facts establish
23 the prior was a strike. Accordingly, there is no merit to Walker's claim that her sentence was
24 improperly enhanced under the three strikes law.

25          c.      *Conclusion*

26 For all the foregoing reasons, the Court recommends that ground one be **DISMISSED** as
27 procedurally barred. *See Bennett*, 322 F.3d at 586. In the alternative, the Court recommends that
28 ground one be **DENIED** because it fails to state a cognizable federal claim and fails on the merits.

1         2.     *Sufficiency of the Evidence to Support Walker's Conviction for Assault with a Deadly Weapon on Diana Berlinguette*

Walker next argues there was insufficient evidence to support her conviction for the second count of assault with a deadly weapon against victim Diana Berlinguette because Berlinguette inserted herself into the altercation between Walker and McDaniel. (Pet. at 6; Pet'rs Exs. at 21-30; Traverse at 6.) As with the preceding claim, Respondent argues the claim is procedurally defaulted because Walker first brought it in the habeas petition she filed in the California Supreme Court, which denied the petition with a citation to *Dixon*. (Lodgment Nos. 18, 19.) For the reasons outlined above in Section IV(B)(1)(a)(i)-(vi) of this R&R, the Court concludes this claim is also procedurally defaulted.

Moreover, as Respondent points out, the United States Supreme Court has stated that collateral challenges to a conviction obtained as a result of a guilty plea are severely restricted:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not [within the range of competence required of an attorney in a criminal case].

*Tollet v. Henderson*, 411 U.S. 258, 266 (1973).

Because Walker admitted to committing the assaults by pleading guilty, she may not now challenge the sufficiency of the evidence to support her convictions. *Tollet*, 411 U.S. at 266. In any event, Walker has not shown there was insufficient evidence to support her conviction for assaulting Berlinguette with a deadly weapon. In assessing a sufficiency of the evidence claim, the Supreme Court has stated that "'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Juan H. v. Allen*, 408 F.3d 1262, 1275 (9th Cir. 2005) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In determining whether sufficient evidence has been presented, the Court must accept the elements of the crime as defined by state law. *See Jackson*, 443 U.S. at 324, n.16; *Aponte v. Gomez*, 993 F.2d 705, 707 (9th Cir. 1993) (stating that federal courts are "bound by a state court's construction of its own penal statutes"). In California, assault with a deadly weapon requires "'an unlawful attempt, coupled with a present ability, to commit a violent injury on the person

of another.'" *People v. Milward*, 182 Cal. App. 4th 1477, 1480 (2010) (quoting Cal. Penal Code § 240). A "deadly weapon" is defined in Penal Code section 245(a)(1) "as an object or instrument used in a way 'likely to produce great bodily injury.'" *In re R.P.*, 176 Cal. App. 4th 562, 567 (2008). In the case of objects like a hammer, California courts have concluded thus:

> There are two classes of dangerous or deadly weapons: instrumentalities that are weapons in the strict sense, such as guns and blackjacks; and instrumentalities which may be used as weapons but which have nondangerous uses, such as hammers and pocket knives. (*People v. Raleigh* (1932) 128 Cal.App. 105, 108, 16 P.2d 752.) Instrumentalities in the first category are "dangerous or deadly" per se. (*Ibid.*) An instrumentality in the second category is only "'dangerous or deadly'" when it is capable of being used in a "'dangerous or deadly'" manner and the evidence shows its possessor intended to use it as such. (*Id.* at pp. 108-109, 16 P.2d 752.)

*People v. Burton*, 143 Cal. App. 4th 447, 457 (2006).

According to the state appellate court's factual findings, to which this Court must defer under 28 U.S.C. § 2254 (e)(1), Walker hit Berlinguette on both arms with the hammer when Berlinguette tried to intervene in Walker's assault on McDaniel in order to protect a baby who was in the elevator at the time of the assault. (Lodgment No. 7 at 2.) These actions satisfied the elements of the crime of assault with a deadly weapon as defined by California law. *See* Cal. Penal Code § 245(a)(1); *Milward*, 182 Cal. App. 4th at 1480; *In re R.P.*, 176 Cal. App. 4th at 567; *Burton*, 143 Cal. App. 4th at 457.

For all the foregoing reasons, the Court recommends the claim be **DISMISSED** as procedurally barred. In the alternative, the Court recommends the claim be **DENIED** on the merits.

3.      *Whether Walker's Sentence Violates California Penal Code Section 654 (Claim Three)*

Walker next contends her sentence violates California Penal Code section 654 by punishing her twice for the same conduct. California Penal Code section 654(a) states, in pertinent part:

> An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision.

Cal. Penal Code § 654.

Respondent again asserts this claim is procedurally barred, and the Court agrees for the same reasons discussed in section IV(B)(1)(a)(i)-(vi) of this R&R. Respondent also argues the claim does not

///

1  present a federal question and that, in any event, Walker is precluded by her guilty plea from challenging
2  her sentence on this ground. (Mem. of P. & A. Supp. Answer at 13-14.)

3      Respondent is correct that, to the extent Walker complains of the manner in which she was
4  sentenced under California law and whether her sentence violates Penal Code section 654 is purely a
5  matter of state sentencing law. Questions regarding the application of state sentencing laws are not
6  cognizable on federal habeas review. *See Estelle*, 502 U.S. at 62; 28 U.S.C. § 2254(a); *Miller*, 868 F.3d
7  at 1118-19.

8      In any event, it does not appear that Walker's sentence violates Penal Code section 654. Section
9  654 prohibits multiple sentences for an indivisible course of conduct that violates multiple penal code
10 sections. *People v. Latimer*, 5 Cal. 4th 1202, 1211 (1993). A defendant's intent and objective are
11 determining factors as to whether a course of conduct is "indivisible." (*Id.*) The facts as recounted by
12 the California appellate court reveal that Walker had two objectives: first, to injure McDaniel and
13 second, to stop Berlinguette from interfering with her first objective. (*See* Lodgment No. 7 at 2.)

14     For all the foregoing reasons, the Court recommends this claim be **DISMISSED** as procedurally
15 defaulted. In the alterative, the Court recommends the claim be **DENIED** on the merits.

16     4.   *Failure to Advise Walker of Her Right Against Self-Incrimination and to a Jury Trial on*
17        *the Validity of Her Prior Convictions*

18     Walker alleges that her Fifth Amendment rights were violated because she was not advised of
19 her right against self-incrimination with regard to her admission to suffering a prior conviction, and her
20 Sixth Amendment right to a jury trial were violated when she was not advised of the right to have a jury
21 decided the validity of her prior conviction. (Pet. at 8; Pet'rs Exs. at 30-34; Traverse at 7; Pet'rs
22 Traverse Exs. at 7.) Respondent contends Walker was advised of these rights and properly waived them.
23 (Mem. P. & A. Supp. Answer at 17-19.) Walker raised these claim in her direct appeal, alleging that
24 the waiver contained in the plea form she signed was insufficient. (Lodgment No. 4.) The state
25 appellate court rejected the claim as follows;

26     In any case, the waiver is valid. A defendant has the right to a jury trial on
    alleged aggravating factors underlying an upper term. (*Cunningham v. California*,
27     *supra*, 549 U.S. ___ [127 S.Ct. 856].) *Boykin v. Alabama* (1968) 395 U.S. 238, 242, 243
    (*Boykin*), requires a showing in the record that the defendant has knowingly and
28     voluntarily waived his or her right to a jury trial. The waiver may be accompanied by
    the use of a form. (*In re Ibarra* (1983) 34 Cal.3d 277, 285.) The record here includes
    a form that Walker has signed explicitly allowing the sentencing judge to "determine the

> existence or non-existence of any aggravating facts which may be used to increase my sentence. . . above the middle term. . . ." The record shows adequate compliance with the *Boykin* requirements.

(Lodgment No. 7 at 4.)

The state appellate court correctly analyzed Walker's claim. So long as a guilty plea is entered knowingly and voluntarily, "*Boykin [v. Alabama*, 395 U.S. 238, 242 (1969)] does not require the state court to enumerate all of the rights a defendant waives as long as the record indicates that the plea was entered voluntarily and understandingly." *Rodriguez v. Ricketts*, 798 F.2d 1250, 1254 (9th Cir. 1986). Voluntariness is a question of law and must be demonstrated by tangible evidence in the record, considering the totality of the circumstances surrounding the plea. *Marshall v. Lonberger*, 459 U.S. 422, 431-32 (1983); *Brady v. United States*, 397 U.S. 742, 749 (1970); *Boykin*, 395 U.S. at 242. The historical facts which support a determination of voluntariness, however, are questions of fact. *Marshall*, 459 U.S. at 431-32. Under 28 U.S.C. § 2254(e)(1), factual findings made by a state court are presumed correct, but may be rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). A court reviewing the voluntariness of a guilty plea is entitled to give great weight to in-court declarations made by a defendant: "[T]he representations of the defendant, his lawyer, and the prosecutor at [a guilty plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). The state court found Walker's guilty plea was knowing and voluntary. (Lodgment No. 7 at 4.) The record amply supports this conclusion. Walker initialed a box on the plea form which indicated she understood she had the right to "confront and cross-examine all the witnesses against me" and that she had the "right to remain silent" with regard to "all charges, allegations and prior convictions" filed against her, (Lodgment No. 1 at 00006), and she has presented no evidence that supports a contrary conclusion. Accordingly, Walker's waiver was valid.

Moreover, to the extent Walker argues her aggravated sentence violates the Sixth Amendment, her claim is without merit. In a series of cases beginning with *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Supreme Court has declared that any fact, other than a prior conviction, that increases the sentence for a crime beyond the statutory maximum must be proved beyond a reasonable doubt or

admitted to by the defendant. *See Cunningham v. California*, 549 U.S. 270, 274-75 (2007) (citing *Apprendi*, 530 U.S. 466) and *Blakely v. Washington*, 542 U.S. 296, 303 (2004); *see also United States v. Booker*, 543 U.S. 220 (2005). On the plea form that she signed and during the plea colloquy, Walker admitted to having been previously convicted of assault with a deadly weapon. (Lodgment No. 1 at 00006; Lodgment No. 20 at 7.) In addition, she initialed a box on the plea form indicating she knew the judge could find true aggravating circumstances which would increase her sentence above the middle term. (Lodgment No. 1 at 00007.) Thus, Walker clearly waived any Sixth Amendment challenge to the use of her prior conviction to give her an aggravated sentence.

In addition, the Ninth Circuit has stated that "if at least one of the aggravating factors upon which the judge relied in sentencing . . . was established in a manner consistent with the Sixth Amendment, [a] sentence does not violate the Constitution." *Butler v. Curry*, 528 F.3d 624, 643 (9th Cir. 2008.) Here, Walker's admission that she committed an assault with a deadly weapon on two people and that she had suffered a prior serious felony which was a strike under California law was sufficient under California's Rules of Court, which govern the finding of aggravating circumstances, to impose the aggravated term. *See* Cal.R.Ct. Rule 4.421(b). At least two aggravating factors apply to Walker: "(1) The defendant has engaged in violent conduct that indicates a serious danger to society," and "(2) The defendant's prior convictions as an adult or sustained petitions in juvenile delinquency proceedings are numerous or of increasing seriousness." *See* Cal.R.Ct. 4.421(b)(1), (2). Thus, Walker's sentence satisfies the Sixth Amendment's requirements. *See Butler*, 528 F.3d at 643.

For the foregoing reasons, the state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. *Williams*, 529 U.S. at 412-13. Walker is not entitled to relief as to this claim.

    5.  *Whether Walker's Sentence Violates the Eighth Amendment*

Walker states on page thirty-five of her petition that her sentence violates the Eighth Amendment to the United States Constitution. (Pet. at 25.) Respondent does not address this claim, and it does not appear to be exhausted. Nevertheless, this Court may deny the petition if it is "perfectly clear that the applicant does not raise even a colorable federal claim." *Cassett v. Stewart*, 406 F.3d 614, 624 (9th Cir. 2005).

In *Lockyer v. Andrade*, the Supreme Court concluded that the only clearly established legal principle that could be discerned from the Court's Eighth Amendment jurisprudence was that "[a] gross disproportionality principle is applicable to sentences for a term of years . . . . [T]he precise contours of [the principle] are unclear, [and it is] applicable only in the 'exceedingly rare' and 'extreme' case." *Andrade*, 538 U.S. at 72-73 (citing *Harmelin v. Michigan*, 501 U.S. at 1001). The Supreme Court also explained that "the governing legal principle gives legislatures broad discretion to fashion a sentence that fits within the scope of the proportionality principle . . . ." *Id.* at 76 (quoting *Harmelin*, 501 U.S. at 998). Because of this, "[t]he gross disproportionality principle reserves a constitutional violation for only the extraordinary case." *Id.* at 77.

The Ninth Circuit has given this Court some guidance as to the kind of "exceedingly rare" Eighth Amendment claim that warrants federal habeas relief. *See Duhaime v. Ducharme*, 200 F.3d 597, 600 (9th Cir. 2000) ("[Ninth Circuit] cases may be persuasive authority for purposes of determining whether a particular state court decision is an 'unreasonable application' of Supreme Court law, and also may help us determine what law is 'clearly established.'"). In two recent cases, the court has overturned three strikes sentences where either the triggering offense or the defendant's prior criminal history were not sufficiently serious.

In *Ramirez v. Castro*, 365 F.3d 755, 775 (9th Cir. 2004), the court concluded that a sentence of twenty-five years to life for a nonviolent shoplifting of a $199.00 VCR where the defendant's prior convictions were two nonviolent second degree robberies, violated the Eighth Amendment. Ramirez's prior robberies did not involve weapons, and the "force" in both was minimal. *Id.* at 768. Moreover, the one-year jail term Ramirez received for the two robberies was also indicative of the less-than-serious nature of the offenses, and it "was the only period of incarceration ever imposed upon Ramirez prior to his Three Strikes sentence." *Id.* at 769. Comparing Ramirez's case to *Rummel v. Estelle*, 445 U.S. 263 (1980), *Solem v. Helm*, 463 U.S. 277 (1983), and *Andrade*, the court concluded that "this [was] the extremely rare case that gives rise to an inference of gross disproportionality." *Ramirez*, 365 F.3d at 770. After conducting intra- and interjurisdictional comparisons of Ramirez's sentence, the court found the state court's decision to uphold Ramirez's sentence was an objectively unreasonable application of clearly established Supreme Court law. *Id.* at 770-73 ; *see also Reyes v. Brown*, 399 F.3d 964 (9th Cir.

2005) (noting that Reyes's sentence of twenty-six years to life for a "triggering felony" of perjury on a driver's licence application stated a plausible case for relief under Ramirez and remanding to the district court for an evidentiary hearing on the gravity of Reyes's prior conviction for armed robbery).

More recently, the Ninth Circuit struck down a sentence of twenty-eight years to life imposed on a defendant who had failed to update his sex offender registration within five days of his birthday. *Gonzalez v. Duncan*, 551 F.3d 875 (9th Cir. 2008). The court first considered whether the sentence gave rise to an inference of gross disproportionality by examining both the gravity of the offense and the severity of the penalty. *Id.* at 883-87. The court concluded that California law had defined Gonzalez's crime as simply a "technical regulatory requirement that resulted in no social harm and to which little or no moral culpability attaches." *Id.* at 887. It also considered Gonzalez's prior criminal history, which was extensive and serious, including possession of drugs, car theft, attempted forcible rape, lewd conduct with a child under the age of fourteen, robbery, and spousal abuse. The Court found, however, that there was no "rational relationship between Gonzalez's failure to update his sex offender registration annually and the probability that he will recidivate as a violent criminal or sex offender." *Id.* at 887. Without a rational connection between Gonzalez's past behavior and his current conviction, there was no justification for an increased sentence for the "passive, harmless and technical violation of the registration law." *Id.* at 885. Gonzalez's sentence was the "third most severe penalty available under California law, exceeded in severity only by death and life imprisonment without the possibility of parole." *Id.* at 886. Accordingly, his sentence raised an inference of gross disproportionality. *Id.* at 887. The *Gonzalez* court also conducted intra- and interjurisdictional comparisons and found that the twenty-eight year to life sentence imposed on Gonzalez was "substantially more severe than penalties California imposes for far more serious crimes," including second degree murder (fifteen years to life), voluntary manslaughter (three, six, or eleven years), and rape (three, six, or eight years). *Id.* Moreover, the court found that "[i]n at least ten jurisdictions, a first registration offense is a misdemeanor . . . . Texas appears to be the only state besides California that would mandate a sentence of 25 years or longer for a third felony offense, including a violation of a sex offender registration law." *Id.* at 888. Accordingly, Gonzalez's sentence violated the Eighth Amendment. *Id.* at 889.

//

The Ninth Circuit has upheld three strikes sentences, however, in cases where either the triggering offense or the defendant's prior record involve violence or the threat of violence. Thus, in *Rios v. Garcia*, 390 F.3d 1082 (9th Cir. 2004), the court concluded that a sentence of twenty-five years to life for a conviction for a felony petty theft did not violate the Eighth Amendment because Rios "struggled with the loss prevention officer and tried to avoid apprehension . . . . [H]is prior robbery 'strikes' involved the threat of violence because his cohort used a knife . . . . Rios [had] a lengthy criminal history, beginning in 1982, and he ha[d] been incarcerated several times." *Id.* at 1086.

In *Taylor v. Lewis*, 460 F.3d 1093 (9th Cir. 2006), the court upheld a sentence of twenty-five years to life for felony possession of cocaine and misdemeanor possession of drug paraphenalia. Although the triggering offense was nonviolent, Taylor's prior convictions included second-degree burglary, robbery with a firearm, and voluntary manslaughter with the use of a weapon. *Id.* at 1100. Furthermore, "[his] history of recidivism, marked by violence and the intentional taking of human life and spanning some 30 years, is a great deal more severe than the criminal records considered in Rummel and Andrade and probably even more severe than in Ewing." *Id.* at 1101.

Similarly, in *Nunes v. Ramirez-Palmer*, 485 F.3d 432 (9th Cir. 2007), the Ninth Circuit upheld a sentence of twenty-five years to life for a felony petty theft charge where the defendant's prior record was lengthy and violent. His prior record included two rape convictions and various convictions for burglary, robbery, and thefts that began in 1945 when Nunes was twenty years old. *Id.* at 436-37, 439.

Walker's case is readily distinguished from *Ramirez* and *Gonzalez*, and is much closer factually to *Rios*, *Taylor*, and *Nunes*. Although Walker does not have a particularly lengthy criminal record, it is an extremely violent one. In 1984 she was convicted of voluntary manslaughter after she fought with and eventually stabbed her boyfriend to death. (Lodgment No. 1 at 00013.) In 1993, she was convicted of child abuse (a violation of Penal Code section 273d) and assault with a deadly weapon (a violation of Penal Code section 245(a)(1)) after she slapped her fourteen-year-old son across the face then slashed him with a knife. (*Id.*) Walker told her son she was going to kill him if he did not listen to her. The boy's wound required four stitches. (*Id.*) The current offense also involves significant violence. Walker attacked two people with a hammer in an elevator. (*Id.* at 00014.) The people were not armed and were trapped inside a small space with Walker. In addition, an infant who was nearby was in put in danger by Walker's actions. (*Id.*)

Walker's history of recidivism, which includes violence and the threat of violence, coupled with the fact that her current offenses are not "technical" violations of the law, compel this Court's conclusion that Petitioner's case is not the "extremely rare" case which gives rise to an inference of disproportionality. *See Ramirez*, 365 F.3d at 770; *see also Nunes*, 485 F.3d at 439; *Taylor*, 460 F.3d at 1101; *Rios*, 390 F.3d at 1086. Walker is not entitled to relief as to this claim.

### 6. *Ineffective Assistance of Trial Counsel*

In her Traverse, Walker alleges trial counsel was ineffective because she was sentenced under California's three strike's law even though her prior assault with a deadly weapon conviction was not a strike. (Traverse at 6, 8-9.) Respondent does not address this claim, and it does not appear to be exhausted. Nevertheless, as previously stated, this Court may deny the petition if it is "perfectly clear that the applicant does not raise even a colorable federal claim." *Cassett*, 406 F.3d at 624.[3]

To establish ineffective assistance of counsel, Walker must first establish that her trial counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 687 (1984) "This requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Judicial scrutiny of counsel's performance must be "highly deferential." *Id.* at 689. Second, she must show counsel's deficient performance prejudiced the defense. *Id.* at 687. In the context of a guilty plea, Walker can only establish prejudice by showing that "but for counsels' errors, [she] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

As discussed in section IV(B)(1)(b) of this R&R, contrary to Walker's claim, her prior assault conviction was a strike under California law. *See Delgado*, 43 Cal. 4th at 1231. Thus, counsel's failure to raise this issue was not objectively unreasonable. *See Juan H. v. Allen*, 408 F.3d at 1273 (stating that trial counsel is not ineffective when he or she fails to raise a meritless objection). Walker is not entitled to relief as to this claim.

### 7. *Ineffective Assistance of Appellate Counsel*

Finally, Walker alleges in her Traverse that appellate counsel was ineffective. (Traverse at 13.) As with the preceding claim, Respondent does not address this claim, and it does not appear to be

---

[3] In addition, "[a] Traverse is not the proper pleading to raise additional grounds for relief." *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994).

exhausted. Nevertheless, as previously stated, this Court may deny the petition if it is "perfectly clear that the applicant does not raise even a colorable federal claim." *Cassett*, 406 F.3d at 624.[4]

Walker appears to base her claim on appellate counsel's failure to argue that her 1993 prior conviction was not a strike and appellate counsel's filing of a brief pursuant to *People v. Wende*, 23 Cal. 3d 436 (1979).[5] (Traverse at 12-13.) "The proper standard for evaluating [a] claim that appellate counsel was ineffective . . . is that enunciated in *Strickland*." *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (citing *Smith v. Murray*, 477 U.S. 527, 535-36 (1986)). Accordingly, Walker must first show that her appellate counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. She must then establish she was prejudiced by counsel's errors. *Id.* at 694. To establish prejudice, Walker must show a reasonable probability that she would have prevailed on appeal absent counsel's errors. *Smith*, 528 U.S. at 285 (citing *Strickland*, 466 U.S. at 694). "The performance component need not be addressed first '[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.'" *Id.*, n. 144 (citing *Strickland*, 466 U.S. at 697).

As discussed above in section IV(B)(1)(b) of this R&R, there is no merit to Walker's claim that her 1993 prior was not a strike under California law. Thus, she has not established she was prejudiced by counsel's failure to argue this claim. *Smith*, 528 U.S. at 285. Because she does not allege any other claims that counsel could have successfully raised on appeal, she has also not established she was prejudiced by counsel's decision to file a *Wende* brief. For all the foregoing reasons, Walker is not entitled to relief as to this claim.

**V.   CONCLUSION**

Based on the foregoing reasons, the undersigned Magistrate Judge **RECOMMENDS** that claims one, two and three be **DISMISSED** and/or the Petition for Writ of Habeas Corpus be **DENIED**. This report and recommendation is submitted to United States District Judge Irma E. Gonzalez pursuant to 28 U.S.C. § 636(b)(1).

**IT IS ORDERED** that no later than **August 3, 2010**, any party to this action may file written

---

[4] *See* footnote two.

[5] *People v. Wende* permits counsel to file a "no merits" brief when counsel determines that there are no arguable issues on which to pursue on appeal.

1  objections with the Court and serve a copy on all parties. The document should be captioned
2  "Objections to Report and Recommendation."

3  **IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and
4  served on all parties no later than **August 10, 2010**. The parties are advised that failure to file objections
5  within the specified time may waive the right to raise those objections on appeal of the Court's order.
6  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

7  **IT IS SO ORDERED**.

8  DATED: July 13, 2010

_____
Peter C. Lewis
U.S. Magistrate Judge
United States District Court